Todd M. Galante
**LeClairRyan, A Professional Corporation**
One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, New Jersey 07102
Telephone: (973) 491-3364
Facsimile: (973) 491-3481

-and-

**Ilan Markus**
**LeClairRyan, A Professional Corporation**
545 Long Wharf Drive, 9th Floor
New Haven, Connecticut 06511
Telephone: (203) 672-3212
Facsimile: (203) 672-3231

**Attorneys for PNC Bank, National Association**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JVJ PHARMACY INC. d/b/a<br>UNIVERSITY CHEMISTS,<br><br>                      Debtor. | Chapter 11<br><br>Case No. 16-10508-SMB |

**OBJECTION OF PNC BANK, NATIONAL ASSOCIATION TO DEBTOR'S
APPLICATION FOR INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361 AND
363 AND FED. R. BANKR. P. 4001 AUTHORIZING DEBTOR TO USE CASH
COLLATERAL; GRANTING ADEQUATE PROTECTION TO LENDERS; AND
SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)**

PNC Bank, National Association (hereinafter "PNC"), by and through its undersigned attorneys, hereby objects (the "Objection") to the application of above-captioned debtor and debtor-in-possession (the "Debtor") for an interim order pursuant to 11 U.S.C. §§ 105, 361, and 363 and Federal Rule of Bankruptcy Procedure 4001 authorizing the Debtor to use cash collateral on an interim basis (the "Cash Collateral Motion"), and in support thereof, states as follows:

6895914

**BACKGROUND**

1. On or about March 3, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court. Since the Petition Date, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor has continued to operate its business and manage its financial affairs as a debtor-in-possession.

2. An Official Committee of Unsecured Creditors has not been appointed.

Beginning of PNC's Customer Relationship with the Debtor

3. The Debtor's customer relationship with PNC began in mid-November 2010 when JVJ Pharmacy, Inc. ("JVJ") approached PNC with a request for a commercial loan and/or line of credit. This inquiry led to a certain written Commitment Letter dated November 16, 2010 and written "Summary of Terms and Conditions" (with Exhibit "A" thereto – "Items to Be Supplied"), which preceded and ultimately led to the execution and delivery of integrated agreements and loan documents governing the loan transactions that are the subject of this action.

4. The subject loans and credit facilities (collectively, the "Loans") to be made by PNC, as Lender, to JVJ, as Borrower or Obligor, were evidenced by and subject to, among other things:

(a) that certain Letter, Summary of Terms and Conditions and Exhibit A attached thereto dated November 16, 2010 from PNC to JVJ. and accepted by JVJ and individually by James Zambri ("Zambri"), President, Chief Executive Officer and sole shareholder (the "Commitment Letter"), who absolutely and unconditionally guaranteed the Loans;

(b) that certain Loan Agreement (the "Loan Agreement"), signed and delivered by JVJ to PNC and dated November 22, 2010;

2

(c) that certain Committed Line of Credit Note in the original principal amount of $2,500,000.00 (the "$2.5 Million Note") signed and delivered by JVJ to PNC dated November 22, 2010, as modified by [i] that certain Restated and Modified Committed Line of Credit Note dated June 6, 2011, in the principal amount of $3,000,000.00 (the "$3 Million Note"), and [ii] that certain Amendment to Loan Documents dated June 6, 2011 (the "2011 Amendment to Loan Documents"), and signed and delivered by JVJ to PNC;

(d) that certain Term Note in the original principal amount of $500,000.00 (at times, "Term Note" or "$500,000.00 Term Note") signed and delivered by JVJ to PNC dated November 22, 2010;

(e) that certain Hedge Agreement and/or ISDA Master Agreement (the "Swap") signed and delivered by JVJ to PNC dated November 22, 2010;

(f) that certain Guaranty and Suretyship Agreement ("Guaranty") dated November 22, 2010, signed and delivered by Zambri to PNC,

(g) that certain Security Agreement (at times, "Security Agreement") signed and delivered by JVJ to PNC dated November 22, 2010; and

(h) that certain Consent of Guarantor ("Consent of Guarantor") dated July 1, 2010 (The Commitment Letter, Agreement, $2.5 Million Note, Term Note, Guaranty, $3 Million Note, 2011 Amendment to Loan Documents, Swap, Security Agreement together with all other agreements, instruments, indemnities, certificates and documents executed and/or delivered in connection therewith or referred to therein, the terms of which are incorporated herein by reference (as amended, modified or renewed from time to time) are hereinafter collectively referred to as the "Loan Documents" (which are comprised of the "2010 Loan Documents" and the "2011 Loan Documents").

5. Pursuant to section 2 of the November 22, 2010 Security Agreement, in order to

3

secure its Obligations to PNC, JVJ, as Borrower and Grantor, pledged to PNC, as secured party, a continuing lien on and security interest in the "Collateral," as therein defined in section 1(a) to include all personal property of JVJ, including but not limited to the following, whether now owned or hereafter acquired or arising, wherever located: [i] accounts; [ii] securities entitlements, securities accounts, commodity accounts, and investment accounts; [iii] deposit accounts; [iv] instruments; [v] documents; [vi] chattel paper; [vii] inventory, including but not limited to raw materials, work in process, or materials used or consumed in JVJ's business; [viii] goods of every nature, including stock-in-trade; [ix] equipment, including machinery, vehicles and furniture; [x] fixtures; [xi] agricultural liens; [xii] as-extracted collateral; [xiii] general intangibles of every kind and description; [xiv] all cash and non-cash proceeds; and various categories of other specified Collateral. Immediately following the closing memorialized by the Loan Documents, PNC Bank also proceeded to file one or more UCC Financing Statements with respect to the Collateral, in furtherance of its rights under the Loan Documents.

6.      As more fully explained in the below-described complaints and by PNC's filings in the Debtor's prior bankruptcy filings, JVJ and Zambri breached the Loan Documents and took several wrongful and evasive actions in connection with the Loans and the Collateral that were harmful to PNC.

7.      On or about October 12, 2011, PNC, through its counsel, filed a Complaint against JVJ and Zambri in the United States District Court for the Southern District of New York, commencing Civil Action No. 11-cv-07186 and seeking money damages, injunctive and other relief (the "Federal Case") for alleged wrongful actions taken by JVJ and Zambri in connection with the Loans.

8.      On October 20, 2011, PNC, through its counsel, filed a Verified Complaint against JVJ and Zambri. The Verified Complaint was served on JVJ and Zambri through their

4

attorneys.

9. On or about October 26, 2011, PNC filed and served its proposed Order to Show Cause for Preliminary Injunction with Temporary Restraining Order and Order Appointing Custodial Receiver. The court entered a Scheduling Order on October 27th.

10. On October 28, 2011, the District Court entered an order enjoining the Debtor from "undertaking any transaction outside the ordinary course of business, except upon at least 48 hours to this Court and to the plaintiff" and from "effecting any payments, direct or indirect, from JVJ to defendant James Zambri." It also directed expedited discovery and set an evidentiary hearing for Friday, November 4, 2011 to address, among other things, appointment of a Custodial Receiver for JVJ.

11. PNC commenced its expedited discovery of JVJ and Zambri. Moments before Zambri was to appear for deposition, JVJ filed for Chapter 11 relief.

JVJ's First Bankruptcy Filing

12. On November 3, 2011, JVJ filed a chapter 11 petition with this Court.

13. Under the Debtor's confirmed second amended plan (the "Plan"), PNC was granted an allowed secured claim in the amount of $3.4 million and secured by a valid, perfected, and enforceable first priority lien and security interest in substantially all of the Debtor's assets without the need for any action to be taken to perfect PNC's liens.

14. The Plan required JVJ to make monthly payments on PNC's loan claim in the amount of $32,475.00, with a balloon payment in thirty months of approximately $2.6 million.

15. The Plan also referenced an agreement between PNC and Zambri to settle the Federal Case by which, among other things Zambri would pledge real estate to secure the Debtor's required payments under the Plan, and would provide PNC with financial reports of the Debtor.

5

16. Although it appears as though the Debtor made all regular monthly payments under the Plan, the Debtor did not make the balloon payment, did not provide any financial reporting to PNC, and filed this case, instead.

## PNC BANK'S OBJECTION TO THE CASH COLLATERAL MOTION

17. By the Cash Collateral Motion, the Debtor seeks the use of the collateral securing the indebtedness it owes to PNC and others. PNC objects to the Cash Collateral Motion for numerous reasons, which include, but are not limited to the following.[1]

18. Pursuant to sections 363(c)(2) and (3) of the Bankruptcy Code, the Debtor may not use PNC's cash collateral, because PNC has not consented and does not consent to such use, the Court has not authorized such use after notice and a hearing, and the Debtor has not and cannot provide adequate protection of PNC's interest in the cash collateral, as required by sections 363(e) and 361 of the Bankruptcy Code.

19. The Debtor's basis for its assertion that it can provide the required adequate protection, which it admits it must provide, is that its assets, which consist of its inventory and accounts receivable, total "approximately $4,623,000.00" and that it will have $1,273.25 in profits over the next fifteen weeks sufficient to make its suggested adequate protection payments. The Debtor has failed to provide any support for these assertions, including any historical data such as profit and loss statements, aging reports for both inventory and accounts receivable or other information, which would, in most instances, assist the Court and creditors in determining the reliability and accuracy of the Debtor's assertions. Additionally, the Debtor's budget does not reflect the $11,000.00 in adequate protection payments it proposes to make to its secured

---

[1] PNC reserves the right to present further argument and information at the hearing scheduled for March 8, 2016, and otherwise.

6

creditors.[2]  When those amounts are counted, the Debtor will be operating at a significant negative cash flow, post-petition.

20.    A significant portion of the Debtor's negative cash flow is attributable to Zambi's excessive salary.  The Debtor proposes to pay its sole shareholder an annualized salary of $350,000.00.  Given, among other things, the Debtor's negative cash flow and Zambi's ownership interest in the Debtor, Zambri's salary should be reduced to less than fifty (50%) of its proposed total.

21.    The Debtor proposes that it can provide adequate protection by the grant of replacement liens on all property of the Debtor and its estate.  However, as the Debtor admits, the Debtor's assets consist of its inventory and accounts receivable, in which PNC already has a security interest.  Pursuant to section 552(b)(1) of the Bankruptcy Code, PNC also already has a security interest in the proceeds, products, and profits of its collateral.  The Debtor cannot provide adequate protection as it proposes unless it can provide clear evidence that its business will not result in a diminution of its assets.  Pursuant to section 363(p), the Debtor bears the burden of establishing that PNC's interests are adequately protected.  The Debtor's papers do not satisfy its burden.

22.    The Debtor proposes that the adequate protection payments it makes will be based on the "contract rate of interest" as determined by the applicable loan documents.  Pursuant to the PNC Loan Documents, as a result of the pre-petition default by the Debtor, PNC is contractually entitled to its default rate of interest.  PNC objects to the Debtor's proposed payment to the extent that the Debtor proposes any thing less than the default rate of interest. *See Delbridge v. Production Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989) (recognizing that the adequate protection requirement is intended to ensure that the

---

[2] PNC submits that the $32,475.00 monthly amount that was paid to PNC for thirty straight months pursuant to the

secured creditor gets what it originally bargained for). Furthermore, the Debtor cannot ensure that its use of PNC's cash collateral and other collateral will not result in a diminution in PNC's interest in such cash collateral and other collateral to an extent that is greater than any replacement lien. The Debtor's proposal therefore does not provide the required adequate protection to which PNC is entitled.

23. As further adequate protection for any diminution in value, the Debtor should provide PNC a cash receipts, cash disbursements, inventory, and aging receivables report, (the "Flash Report") every seven (7) days, certified by an officer of the Debtor to be complete, true and accurate.

24. The Debtor also proposes a "Carve Out" for its professionals' fees and those of any statutory committee appointed in this Case. There is no statutory provision for such a Carve Out and the Debtor has offered no benefit that is likely to accrue to PNC for such a provision. PNC does not consent to such a proposal.

25. The Debtor identifies as a "Termination Event" a variance of ten percent (10%) of the Debtor's expenditures as set forth in the proposed Budget. The Debtor does not identify over what period of time this variance is measured, does not describe whether its reference to "expenditures" includes cost of goods sold, or describe in what way, other than through monthly operating reports or requests by PNC to examine the books and records of the Debtor, PNC or any other secured creditor will be able to make a meaningful determination that such a variance has occurred, until perhaps it is too late for PNC to take the necessary steps to avoid diminution of its cash collateral and other collateral. Furthermore, to the extent that the expenditures at issue include costs of goods sold, which PNC asserts it should, then a 10% variance is excessive, permitting the Debtor to have substantial losses before triggering a Termination Event.

---

Plan is the appropriate amount that should be paid to PNC in the context of adequate protection payments herein.

26. Failure to timely provide any Flash Report should constitute a Termination Event.

27. PNC also objects to the ten (10) day notice of the occurrence of a Termination Event.

**WHEREFORE**, PNC respectfully requests that the Court enter an order (i) sustaining PNC's Objection and denying the Debtor's Cash Collateral Motion and First Day Motions, and (ii) granting to PNC such other relief as is deemed appropriate by the Court.

Dated:  March 7, 2016
          Newark, New Jersey

**LeClairRyan, A Professional Corporation**

*/s/  Todd M. Galante*
**Todd M. Galante**
**LeClairRyan, A Professional Corporation**
One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, New Jersey 07102
Telephone:  (973) 491-3364
Facsimile:  (973) 491-3481
Email:  Todd.Galante@leclairyan.com

-and-

**Ilan Markus**
**LeClairRyan, A Professional Corporation**
545 Long Wharf Drive, 9th Floor
New Haven, Connecticut 06511
Telephone: (203) 672-3212
Facsimile: (203) 672-3231
Email:  Ilan.Markus@leclairryan.com

***Attorneys for PNC Bank, National Association***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 7, 2016, he caused a true copy of the foregoing Objection of PNC Bank, National Association to Debtor's Application for Interim Order Pursuant to 11 U.S.C. §§ 105, 361 and 363 and Fed. R. Bankr. P. 4001 Authorizing the Debtor to Use Cash Collateral; and Granting Adequate Protection to the Lenders; and Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b), to be served by transmitting a copy thereof by electronic mail to the following parties:

Avrum J. Rosen, Esq.  
38 New Street  
Huntington, NY 11743  
Email: ajrlaw@aol.com

Susan Golden, Esq.  
Office of the United States Trustee  
33 Whitehall Street, 21st Floor  
New York, NY 10004  
Email: susan.golden@usdoj.gov

/s/ Todd M. Galante  
Todd M. Galante